Filed 4/10/25  In re J.A. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.A., a Person Coming Under the Juvenile Court Law. | H050759 (Santa Cruz County  Super. Ct. No. 22JU00022) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| J.A., | |
| Defendant and Appellant. | |
| In re A.T., a Person Coming Under the Juvenile Court Law. | H050768 (Santa Cruz County  Super. Ct. No. 20JU00232E) |
| THE PEOPLE, | |
| Plaintiff and Respondent, | |
| v. | |
| A.T., | |
| Defendant and Appellant. | |

Minors J.A. and A.T. challenge the juvenile court's true finding that they aided and abetted second degree murder during an armed robbery in which their adult accomplice shot the victim.  The juvenile court identified the relevant life-endangering act as the minors' pointing their guns at the robbery victim, rather than the direct

perpetrator's act of shooting the victim and causing his death. After the juvenile court rendered its dispositional orders, the California Supreme Court decided *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*) and *People v. Collins* (2025) 17 Cal.5th 293 (*Collins*), which clarified that liability for implied malice murder requires an aider and abettor, by words or conduct, to aid in the life-endangering act that proximately causes death. On appeal, the minors contend the juvenile court misapplied the legal standard as clarified in *Reyes* and *Collins*. Because the juvenile court did not have the benefit of the *Reyes* and *Collins* opinions, we will remand for the juvenile court to reconsider its true findings as to second degree murder and the related firearm use allegation applying the standard recently clarified by the Supreme Court. As a result, we do not reach the minors' alternative arguments in support of reversal.

## I. BACKGROUND

Resolution of this matter does not require a detailed analysis of the juvenile court proceedings. We therefore provide only a brief summary of the factual background, derived primarily from eyewitness testimony, geolocation data, videos and text messages obtained from the victim's and perpetrators' cell phones and social media accounts.

The minors, 15 and nearly 14 years old at the time of the murder in October 2021, were tried together at a contested jurisdictional hearing. Text messages between the victim and minors' 19-year old accomplice, Juan Rios, showed Rios arranged to purchase a large quantity of marijuana from the victim. Rios's associate Darver Servin was also present, but disavowed knowledge of the planned robbery. When the victim arrived at the agreed upon location, the minors and Rios held him at gunpoint and took the marijuana by force. After J.A. removed the marijuana from the victim's car, Rios shot the victim in the forehead. Social media accounts associated with Rios and the minors contained several videos taken shortly after the killing in which they are seen smoking marijuana, holding large bags of marijuana, and offering marijuana for sale.

2

The Santa Cruz County District Attorney accused the minors in a Welfare and Institutions Code section 602 petition of murder (Pen. Code, § 187; unspecified statutory references are to this Code) and robbery (§ 211), with special allegations that each minor personally used a firearm during the offenses (§§ 12022.5, subds. (a) & (d); 12022.53, subd. (b)) and that the murder was committed during a robbery (§ 190.2, subd. (a)(17)(A)) and by lying in wait (§ 190.2, subd. (a)(15)). The District Attorney also alleged A.T. violated the terms of probation from a previous Welfare and Institutions Code section 602 proceeding.

The prosecution argued Rios and the minors had planned to rob and kill the victim. The prosecution offered five alternative theories of first and second degree murder culpability, including second degree aiding and abetting implied malice murder. With respect to that theory, the prosecution asserted the minors aided and abetted Rios's life-endangering act of robbing the victim when they jumped out of Rios's car, used their own guns to hold up the victim, and then retrieved the marijuana from the victim's car.

The juvenile court found beyond a reasonable doubt that Rios was the robbery's primary planner and the minors were his co-participants. It found Rios and the minors had planned to rob the victim by force in order to resell the marijuana and, in order to accomplish this plan, Rios required the minors to act as additional armed accomplices because the victim also might have been armed.

The juvenile court rejected the prosecution's first degree murder theories, finding "These youth did not have the requisite intent to kill in a premeditated or deliberate scheme or while lying in wait to kill [the victim]. Neither of them shot and killed [the victim]." The court likewise rejected first degree murder under a felony murder theory because the minors did not commit the fatal act, nor was there proof beyond a reasonable doubt that they acted with reckless indifference to human life. (Pen. Code, §189, subd. (e).) After reviewing factors developed in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, the juvenile court particularly noted the minors'

3

immaturity, impulsivity, and lack of insight, such that "there is insufficient proof beyond a reasonable doubt that either youth was subjectively aware that his actions in an armed robbery created a greater risk of death than any other armed robbery."

The juvenile court found true, however, that the minors committed robbery and committed second degree murder under an aiding and abetting implied malice theory, and found true all special allegations except that the murder was committed by lying in wait. The court reasoned that the armed robbery was the life-endangering act and the minors intentionally aided Rios by pointing their guns at the victim. Noting the probability of death from the life-endangering act must be more than remote or merely possible, the juvenile court found a high probability of death from the minors and Rios pointing their guns at the victim, who also was likely to be armed, while robbing him at night. The court found that each minor understood that death by shooting their guns during an armed robbery was probable, based on the minors' gang associations, J.A. witnessing a previous shooting, and A.T. having previous juvenile court petitions involving gun possession. (The juvenile court also found true A.T.'s probation violation alleged in a Welfare and Institutions Code section 777 petition.)

In its dispositional order as to J.A., the juvenile court declared him a ward of the court and committed him to a ranch camp (Welf. & Inst. Code, § 727) with conditions. The court set the maximum term of confinement at 15 years to life for the murder, plus ten years for the associated firearm use allegation (§12022.53, subd. (b)). The maximum term of confinement was set at 3 years for the robbery, plus ten years for the associated firearm use allegation, which the court properly stayed under section 654. The court struck the robbery-murder special circumstance and the personal firearm use alleged under section 12022.5, subdivision (d).

The dispositional order as to A.T. continued him as a ward of the court and committed him to a ranch camp with conditions. The court confirmed the maximum term of confinement for his previous petitions (three years, two months) and imposed the same

4

sentence as for J.A. for the murder and robbery, setting A.T.'s total maximum term of confinement at 28 years, two months to life.

We ordered the individual appeals of J.A. and A.T. consolidated for purposes of argument and disposition.

## II.    DISCUSSION

### A. AIDING AND ABETTING IMPLIED MALICE MURDER

Murder is the unlawful killing of a human being with malice aforethought. (§ 187, subd. (a).) "Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder." (*People v. Knoller* (2007) 41 Cal.4th 139, 151 (*Knoller*).) The requisite malice may be express or implied. (§ 188, subd. (a).) Murder is committed with implied malice when "the killing is proximately caused by ' "an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' " (*Knoller*, at p. 143.) To be considered the proximate cause of death, a defendant's actions must be a substantial contributing factor to the result, not merely incidental or theoretical. (*People v. Jennings* (2010) 50 Cal.4th 616, 643.)

Direct aiding and abetting is based on the combined acts of all participants, together with the mental state of the individual aider and abettor. " 'In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the *act*, intent to aid the perpetrator in the commission of

5

the *act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' " (*Reyes, supra,* 14 Cal.5th at pp. 990–991.) " 'The relevant act is the act that proximately causes death.' " (*Id*. at p. 991.)

" '[P]roof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea'—which … includes knowledge that the direct perpetrator intends to commit the crime or life-endangering act, 'and (c) the aider and abettor's actus reus— conduct by the aider and abettor that in fact assists the achievement of the crime.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 467 ("*Curiel*".) "The aider and abettor must know the direct perpetrator intends to commit the murder or life-endangering act and intend to aid the direct perpetrator in its commission. It is this mental relationship to the perpetrator's acts that confers liability on the aider and abettor." (*Id*. at p. 468.)

### B. THE JUVENILE COURT MUST DETERMINE WHETHER THE LIFE-ENDANGERING ACT WAS THE SHOOTING VERSUS THE ARMED ROBBERY

After the juvenile court rendered its dispositional order, the California Supreme Court decided *Reyes*, clarifying that liability for implied malice murder requires an aider and abettor, by words or conduct, to aid in the actual killer's life-endangering act. The *Reyes* court distinguished preceding "acts that merely create a dangerous situation in which death is possible depending on how circumstances unfold" from the act proximately causing death. (*Reyes*, *supra*, 14 Cal.5th at pp. 989, 991.) The *Reyes* Court determined that the lower court had too broadly identified the life-endangering act to encompass conduct leading up to a fatal shooting. There the larger conduct involved a group of gang members (one of whom Reyes knew to be armed) riding bicycles to a rival gang's territory and surrounding the victim's moving car. (*Reyes*, *supra*, 14 Cal.5th at pp. 989, 991–992.) The Supreme Court defined the relevant life-endangering act—the act that proximately caused the victim's death—as a fellow gang member's shooting the car's driver. The court emphasized that "implied malice murder requires attention to the

aider and abettor's mental state concerning the life endangering act committed by the direct perpetrator, such as shooting the victim[;] the trial court should have asked whether [the defendant] knew that [the direct perpetrator] intended to shoot the victim, intended to aid him in the shooting, knew that the shooting was dangerous to life, and acted in conscious disregard for life." (*Id.* at pp. 991–992.)

The minors briefed their appeals separately, but both rely on *Reyes* to argue that the juvenile court incorrectly identified holding the victim at gunpoint during the robbery as the relevant life-endangering act. The minors argue that Rios's shooting of the victim was the life-endangering act that proximately caused death and the prosecution presented no evidence that the minors *knew* Rios intended to shoot the victim or that they intended to assist in *that* act.

On the day before oral argument in this court, the California Supreme Court decided *People v. Collins,* which further elaborated on the requirements to establish aiding and abetting liability for implied malice murder. *Collins* recognized a distinction between the act directly ending the victim's life and the life-endangering act, stating: " 'The aider and abettor must know the direct perpetrator intends to commit the murder or life-endangering act and intend to aid the direct perpetrator in its commission.' " (*Collins*, *supra*, 17 Cal.5th at p. 311, quoting *Curiel*, *supra*, 15 Cal. 5th at p. 468.) The majority in *Collins* found the evidence insufficient to support a mother's second degree murder conviction based on failure to protect her infant son from his father. (*Collins,* at p. 312.) A.T.'s counsel submitted *Collins* as supplemental authority on the day of argument and we requested supplemental briefing regarding its application to this appeal.

Although whether the juvenile court properly considered the elements of the offense presents a question of law for our independent review (*Reyes*, *supra*, 14 Cal.5th at p. 988), we are also guided by the application in *Collins* of the substantial evidence standard in concluding that the evidence did not establish culpability for murder. (*Collins, supra,* 17 Cal.5th at pp. 307, 312–317.) Review under either standard requires a

7

determination of the "life-endangering act proximately causing death," as that act has been recently discussed in *Reyes* and *Collins*. Because proximate causation is a question of law so intertwined with the evidence, the juvenile court should determine the relevant act in the first instance. As *Reyes* and *Collins* were decided after the juvenile court rendered its dispositional orders, the juvenile court could not apply their reasoning in considering whether the shooting versus the armed robbery was the relevant life-endangering act, and further whether the evidence was sufficient regarding the minors' knowledge and intent as to that act.

The Attorney General argues the juvenile court properly understood and distinguished between the "life-endangering armed robbery" and the resulting "lethal act" of Rios shooting the victim. Specifically, the Attorney General contends that dangerous acts preceding the proximate cause of death also can be life-endangering for purposes of implied malice murder and that aiding and abetting liability can attach where an accomplice aids an antecedent dangerous act without necessarily aiding the lethal act itself. The Attorney General asserts the minors aided and abetted implied malice murder by helping Rios rob the victim at gunpoint while personally harboring the necessary mental state, because they knew Rios was going to rob the victim and they intended to assist him in committing the armed robbery.

Because *Reyes* was decided after the juvenile court's dispositional orders, the juvenile court had no opportunity to consider *Reyes* in distinguishing the "life-endangering armed robbery" and the "lethal act" of the shooting. Nor is it clear whether the juvenile court considered, as discussed in *Reyes*, that liability for implied malice murder requires the direct aider and abettor to aid in the commission of the life-endangering act that proximately causes death, in contrast to dangerous conduct that occurs before that act. (See *Reyes*, *supra*, 14 Cal.5th at p. 991; see also § 188, subd. (a)(3) [providing that, except as stated in section 189 governing felony murder, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought.

8

Malice shall not be imputed to a person based solely on his or her participation in a crime."]; *People v. Taylor* (2025) 108 Cal.App.5th 849, 867–868, fn. 10. ["*Reyes* makes clear that aider and abettor liability for implied malice murder requires a showing of implied malice with regard to the life-endangering act, rather than any underlying crime."].)

None of the decisions cited by the Attorney General considered such a distinction nor found liability for aiding and abetting implied malice murder where the accomplice merely assisted a dangerous act that was not the proximate cause of death. In each case there was sufficient evidence that the defendant directly participated in the life-endangering conduct that proximately caused the victim's death. The defendant in *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 600–601 actively encouraged and participated in the driver's decision to speed and disobey traffic signals while evading police during rush hour traffic. In *People v. Vizcarra* (2022) 84 Cal.App.5th 377, the evidence showed "Vizcarra angrily stated he would 'take care of' the victim; sought assistance from his brother-in-law, who appeared on the scene with confederates in tow; grabbed the victim by the neck and placed him in a chokehold; dragged him into a bedroom with his confederates; stomped on him as he lay dying on the floor; wrapped him in a rug as he clung to life; placed a bag over his head; and poured gasoline all over the home [which was then set on fire] where the victim's body was found." And the court in *People v. Schell* (2022) 84 Cal.App.5th 437, 443 found it reasonable to infer that Schell knew the victim "was repeatedly being hit in the head with a shovel and a bat and that he intended to aid those acts by participating in the assault." In other cases relied on by the Attorney General, the defendants were found liable as the sole and direct perpetrator whose act of brandishing a gun proximately caused the victim's death. (See *People v. McNally* (2015) 236 Cal.App.4th 1419 [accidental shooting while perpetrator brandished a gun]; *People v. Nieto Benitez* (1992) 4 Cal.4th 91, 109–110 [accidental shooting during a physical altercation]; *People v. Thomas* (2012) 53 Cal.4th 771, 814–

9

815 [loaded gun pointed at victim's head before accidental shooting]; and *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1263 [accidental shooting while teasing victim by waiving gun].)

The Attorney General would distinguish *Reyes* based on the absence in that case of any life-endangering act preceding the shooting other than conduct with no proximate connection to the shooting. Here, in contrast, the juvenile court found the armed robbery was tied directly to the shooting, and the minors aided in the robbery by holding their guns on the victim. Significantly, the juvenile court did not address whether the armed robbery or the minors' actions during the robbery proximately caused Rios to shoot the victim—it found that the armed robbery was itself a life-endangering act and that the minors intentionally aided in its commission by pointing their guns at the victim. We agree with the juvenile court that pointing guns during the robbery was dangerous and potentially lethal, but it is unclear whether the juvenile court would also find that the minors' actions precipitated, provoked or caused Rios to shoot the victim. (See *Reyes*, *supra*, 14 Cal.5th at p. 989.)

The Attorney General argues that *Reyes* does not present the question whether acts other than the actual shooting could be considered the relevant life-endangering act. But *Reyes* did address—and reject—the theory that accompanying the shooter and fellow gang members into rival gang territory and chasing after and surrounding the victim's car could be considered the life-endangering act. *Reyes* thus clarified that the relevant life-endangering act must proximately cause the victim's death and that "[t]o suffice for implied malice murder, the defendant's act […] must ' "involve a high degree of probability that it will result in death." ' " (*Reyes*, *supra*, 14 Cal.4th at p. 989.) The Attorney General likewise contends *Collins* does not present the question whether the fatal act must be considered the life-endangering act, and argues *Collins* "clarifies that the life-endangering act can be different than the life-ending act." In *Collins*, the life-endangering act was the father's final, fatal attack on his infant son, and not the father's

10

previous dangerous acts of abuse. (*Collins*, *supra*, 17 Cal.5th at p. 312.) Both *Collins* and *Reyes* define the relevant life-endangering act as one which proximately causes the victim's death, that is: " 'an act or omission that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act or omission the death of [the victim].' " (*People v. Cervantes* (2001) 26 Cal.4th 860, 866.)

The juvenile court found that pointing guns during the robbery was a life-endangering act because brandishing a loaded weapon is an act dangerous to human life. Although we acknowledge that pointing a gun at a robbery victim "create[s] a dangerous situation in which death is possible depending on how circumstances unfold" (*Reyes*, *supra*, 14 Cal.5th at p. 989), it may but does not *necessarily* " 'involve[] a high degree of probability that it will result in death.' " (*Knoller*, *supra*, 41 Cal.4th at p. 152; accord *People v. Banks* (2015) 61 Cal.4th 788, 802 [In a "garden-variety armed robbery, … death might be possible but [is] not probable."]; *People v. Clark* (2016) 63 Cal.4th 522, 617; *In re Moore* (2021) 68 Cal.App.5th 434, 449.)

Now with the benefit of *Reyes* and *Collins* and their clarification of the elements of aiding and abetting implied malice murder, remand is appropriate to allow the juvenile court to reconsider its true finding as to implied malice murder applying the standard newly clarified in those cases to the evidence here. The juvenile court was clearly thoughtful in its analysis and therefore should have the opportunity to apply the Supreme Court's current reasoning.

We take no position as to what the juvenile court should identify as the "life-endangering act proximately causing death." We also emphasize that our disposition is not based on insufficient evidence, but rather on a post-judgment clarification in the law significant enough to warrant reconsideration of the evidence by the juvenile court in light of *Reyes* and *Collins*.

11

## III.    DISPOSITION

The juvenile court's jurisdictional orders are reversed, and the matters are remanded to allow the juvenile court to reconsider its previous findings as to count 1, second degree murder (§ 187, subd. (a)), and the associated firearm use allegation (§ 12022.53, subd. (b)) in light of the California Supreme Court's direction in *People v. Reyes* and *People v. Collins*.

_____

Grover, J.

**WE CONCUR:**


_____

Bamattre-Manoukian, Acting P. J.



_____

Lie, J.

H050759
*The People v. J.A.*
H050768
*The People v. A.T.*